**Angel Miguel Santiago GONZALEZ, et al., Plaintiffs,**

v.

**Jose Arsenio TORRES, et al., Defendants.**

**Civil No. 93–1765(SEC).**

United States District Court, D. Puerto Rico.

Jan. 29, 1996.

Susana Cortina de Cardenas, Hato Rey, PR, for plaintiffs.

Mayra Maldonado, Department of Justice, Federal Litigation Division, San Juan, PR, for defendants.

### ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' Motion for Summary Judgment (Docket # 30). After a careful examination of applicable law and the parties' arguments, defendants' Motion for Summary Judgment is **GRANTED.**

On May 21, 1993, plaintiffs filed the present case for damages and other relief brought under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985(3) and the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs invoked jurisdiction pursuant to 28 U.S.C. § 1343. Plaintiffs have also filed a complaint in the court of the Commonwealth of Puerto Rico asserting the following claims under state law: Article II, Sections I, VII, VIII and XII of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico and 31 L.P.R.A. § 5141, Article 1802 of the Civil Code and Article 1804 of the Civil Code, 31 L.P.R.A. § 5143.

Plaintiffs filed this complaint against former Secretary of Education Jose Arsenio Torres, Ibis Malpica, School District Superintendent for the School District of Bayamon II, Rosablanca Lopez, the school director of the Juan Morel Campos School, and elementary school teachers Carmen L. Cruz and Eduardo Vazquez. Although plaintiffs initially sued defendants in their official capacities, they amended their complaint to sue the defendants in their personal capacity.

### FACTS

Plaintiff Angel Miguel Santiago Gonzalez (hereinafter "Angel Miguel") was enrolled in the Elementary School Juan Morel Campos during the school years 1989–1990, 1990–1991 and 1991–1992. School officials assigned Angel Miguel to Third Grade (3–3) with Mrs. Carmen L. Cruz as his homeroom teacher. Although the parties dispute the precise facts surrounding his third-grade experience, there were some confrontations between plaintiff Angel Miguel and his fellow students, which created conflict in the classroom. Defendants informed plaintiffs of their decision to transfer Angel Miguel to another classroom to alleviate the existing conflict (Rosablanca Lopez' Statement under Penalty of Perjury, ¶ 9).

Plaintiffs allege that school officials deliberately harassed and humiliated plaintiff Angel Miguel, and decided to expel him without proper notice and hearing. Defendants deny that they ever expelled plaintiff Angel Miguel from school, and only transferred him to another classroom to avoid plaintiff's continuous disruption of classes. Both parties agree that plaintiffs registered their son in a private school for the 1992–1993 school year. Plaintiffs allege such removal was due to the defendants' decision to expel Angel Miguel, whereas defendants allege that they had promoted Angel Miguel to the fourth grade and subsequently plaintiffs voluntarily removed their child from school. Plaintiffs filed an action in May 20, 1993 in the Superior Court of Puerto Rico Bayamon Part, Civil No.: DDP93–0297(506) (Exhibit I). The next day,

May 21, 1993, they filed their claims in federal court, in the present case.

**Summary Judgment**

■ As noted by the First Circuit, summary judgment has a special niche in civil litigation. Its role is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314–315 (1st Cir., 1995).

■ According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property with Buildings,* 960 F.2d 200, 204 (1st Cir. 1992). *See also, Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

**Plaintiff's Section 1983 Claim**

■ The substantive cause of action to claim damages and injunctive relief against individuals and governmental entities who deprive a plaintiff of rights, privileges or immunities "secured by the Constitution and laws" arise from 42 U.S.C. § 1983. To state a valid claim under § 1983, plaintiffs must satisfy three elements:

1) that the officials' conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)

2) that the conduct of which the plaintiff complains was committed by a person acting "under color of state law." *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)

3) that the defendant was personally and directly involved in causing the violation of the plaintiff's federally protected rights. Plaintiff must show a causal connection between the specific defendant and plaintiff's federal rights deprivation. *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 603–604, 46 L.Ed.2d 561 (1976).

Plaintiffs invoke a violation of the Eight and Fourteenth Amendments to comply with the first element of section 1983. A careful examination of the plaintiffs' claim reveals that they have failed to comply with this first element. Accordingly, plaintiffs' § 1983 claim is dismissed.

**A. Plaintiffs' Eighth Amendment Claim**

The Eighth Amendment reads as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

■ The Supreme Court's jurisprudence has repeatedly held that the Eighth Amendment applies only to those persons convicted of crimes. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In this case, the Supreme Court expressly refused to extend the protection of the Eighth Amendment to disciplinary sanctions in public schools.

In *Ingraham,* junior high school students filed an action in a federal district court pursuant to 42 U.S.C. §§ 1981 through 1988 for damages, injunctive and declaratory relief

against the school officials due to the disciplinary corporal punishment in violation of their constitutional rights. The Court concluded that corporal punishment of school children was not per se a violation of the Eighth Amendment prohibition against cruel and unusual punishment. The Court argued that the limitations imposed on the government through the Eighth Amendment were designed to protect those convicted of crime, and did not apply to public school children. The Court noted that public schools are open to public scrutiny; that they were supervised by the community and school teachers and administrators were subject to civil and criminal liability under state law. *id.* at 668–671, 97 S.Ct. at 1410–1412.

■ In the present case, plaintiff Angel Miguel is an elementary school student. He does not fall within the zone of protection which the Eighth Amendment sought to create. Accordingly, his Eighth Amendment claim is hereby dismissed.

### B. Due Process under the Fourteenth Amendment

■ The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived of his property without due process of law. The jurisprudence has extended this protection to traditional forms of real, personal and intangible property as well as the right to certain government benefits.

■ Before the Court determines whether to apply the constitutional guarantee of procedural due process, it must first determine "the presence of a legitimate 'property' or liberty interest within the meaning of the Fifth or Fourteenth Amendment." *Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–572, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548 (1972). If the Court determines the existence of certain property or liberty interests, it must decide what procedures constitute "due process of law" *Ingraham,* at 672, 97 S.Ct. at 1413.

■ In *Board of Regents v. Roth,* the Court identified the sources of property interests: "Property interests ... are not treated by the constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

■ Pursuant to Article 2, section 5 of the Puerto Rico Constitution, plaintiff Angel Miguel may claim a property interest in his right to a public education. Such article provides free public education for all children between the ages of 6 and 18. It also requires elementary school attendance to the extent permitted by the government resources. Insofar as the state has extended the right to a free public education, the Due Process Clause will protect such right. *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). The Due Process Clause guarantees students with a property interest in continued public school education, and the right to a hearing when school officials seek to enforce a temporary suspension or expulsion.

■ Puerto Rican Law No. 68 of August 28, 1990 (Art. 2.04) states that the disciplinary sanctions imposed upon a student shall be proportionate to the fault committed. In the case of a disciplinary sanction which requires the temporary suspension or expulsion, the school officials must notify the student of the charges against him and he shall have right to a hearing before an officer. This section should comply with the guarantees of the Due Process Clause.

■ Plaintiffs allege that the defendants summarily expelled plaintiff Angel Miguel from elementary school without the guarantees established by Law No. 68. The Court rejects this proposition. Plaintiffs allege that the school officials expelled Angel Miguel from school without a proper notice and hearing. The evidence does not show any action on the part of defendants regarding the expulsion of Angel Miguel. On the contrary, defendants have presented evidence that school officials promoted plaintiff to the next grade; school officials listed plaintiff

Angel Miguel Santiago in the roster of fourth grade students for the school year 1992–93. (Exhibit II, School Year 1992–93, Promotional List, student no. 24). Angel Miguel's parents admit that they enrolled Angel Miguel in a private school (Exhibit I, Certified Translation of Plaintiffs' civil action in the Superior Court of Puerto Rico, No. DDP93–0297 (506), paragraph 23). Based on these facts, plaintiffs cannot claim deprivation of any property interest, since they voluntarily relinquished their property interest in a public school education when they transferred their son to a private school. There is no evidence of threats to expel plaintiff from public school and the evidence does show repeated efforts by the school officials to inform the parents about the disciplinary problems incurred by their son. (Rosablanca Lopez' Sworn Statement under Penalty of Perjury, ¶¶ 5, 7; Carmen Cruz' Statement under Penalty of Perjury, ¶¶ 5, 7).

Plaintiffs base their allegations of expulsion without due process on the Statement under Penalty of Perjury proffered by Vivian S. Gonzalez Mora, the mother of plaintiff Angel Miguel Santiago. She states on paragraph 6 of her statement that "on April 13th, 1992, during morning hours, I was notified by Wanda Galindez, Juan Morel Campos's Social Worker, that plaintiff Angel Miguel Santiago was being transferred to another classroom, that of Ms. Fines, and that he was expulsed from the Juan Morel Campos Elementary School for the next school year."

■ Such statement does not present sufficient grounds to defeat defendants' summary judgment motion. The First Circuit Court has recently noted that "the test for Summary Judgment is steeped in reality. Although the remedy must be withheld if material facts are authentically disputed, there is a burden of production: the party opposing the motion must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We have interpreted Rule 56 to mean that "the evidence illustrating the factual controversy cannot be **conjectural** or **problematic;** it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve … If the evidence is merely color-

able, or is not significantly probative, summary judgment may be granted, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 [106 S.Ct. 2505, 2510–2511]." (emphasis added).

■ The Court reiterated "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon **conclusory allegations, improbable inferences** and **unsupported speculation.**" *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *see also Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995) (emphasis added).

Rule 56(e) notes that "[s]upporting and opposing affidavits shall be made on **personal knowledge,** shall set forth such facts as would be **admissible in evidence,** and shall show affirmatively that the affiant is competent to testify to the matters stated therein … When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial" (emphasis added).

■ Plaintiff Vivian S. Gonzalez Mora's Sworn Statement under Penalty of Perjury is hearsay. Pursuant to Federal Rule of Evidence 801(c), hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Plaintiff's statement that "I **was notified by Wanda Galindez** … that plaintiff Angel Miguel Santiago … was expulsed" is hearsay, since it is an out-of-court statement made by a third party (Wanda Galindez) and plaintiff offers it to prove the truth of the matter asserted, that is, that school officials had in fact expelled plaintiff Angel Miguel Santiago Gonzalez from school.

■ Plaintiff Vivian S. Gonzalez Mora's only evidence is a self-serving declaration which is inadmissible evidence. Her claim that her son was expelled rests on conclusory allegations and prompts the Court to accept

the improbable inference that her son was in fact expelled. We decline to do so. Since the evidence proffered by plaintiffs regarding their son's expulsion from school is merely colorable, and not significantly probative, summary judgment may be granted against plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–2511.

Accordingly, since this Court finds that there is no significantly probative evidence that plaintiff was expelled, there is no property interest on which the plaintiffs can hinge their Fourteenth Amendment Due Process Claim. Since plaintiffs have failed to state a violation of any federal laws or Constitution of the United States, plaintiff's 1983 claim must be dismissed.

## C. III. Section 1985(3)

Section 1985(3), which defendants invoke, reads in pertinent parts:

> If two or more persons in any state or territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; … [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his personal property, or deprived of having and exercising any right or privileges of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

■ After a thorough examination of plaintiffs' conspiracy claim, the Court concludes that plaintiffs have failed to establish that defendants' alleged conduct against Angel Miguel Gonzalez were prompted by racial or otherwise invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1797–1798, 29 L.Ed.2d 338 (1971). Such showing is an essential requirement for a Section 1985(3) action. Accordingly, plaintiffs' 1985(3) claim is dismissed.

Finally, we note in passing that this may have been a proper case for abstention under the *Colorado River* Doctrine.

■ The Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings. The Court held that in "exceptional circumstances," a federal court could decline jurisdiction based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246; *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 936–937, 74 L.Ed.2d 765 (1983).

■ The Court in *Colorado River* enumerated four factors to determine whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over some res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–1247. In *Moses H. Cone,* the Court suggested two other factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. *Moses H. Cone,* 460 U.S. at 23, 26, 103 S.Ct. at 941, 942. Another factor mentioned but not applied in *Moses* and which some Courts have considered, is the vexatious or reactive nature of the federal lawsuit, *Moses H. Cone,* 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20; *see e.g. Fuller Co. v. Ramon I Gil, Inc.,* 782 F.2d 306, 308–310 (1st Cir.1986).

■ In *Colorado River,* the Supreme Court stressed that Courts should stay or dismiss cases under this doctrine with great caution. The Court noted 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, 424 U.S. at 817, 96 S.Ct. at 1246, and warned that "only the clearest of justifications will warrant dismissal" *id.* at 819, 96 S.Ct. at 1247.

The court may weigh any single factor differently, depending on the case, and "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818–819, 96 S.Ct. at 1247.

The district court must weigh the important factors "with the balance heavily weighed in favor of the exercise of jurisdiction" *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. The decision whether to surrender jurisdiction is "necessarily left to the discretion of the district court in the first instance" *id.* at 19, 103 S.Ct. at 938, and the district court's decision may be reversed only for an abuse of that discretion. Such discretion must be exercised, however, within the constraints of the 'exceptional circumstances test'." *Id.; see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529 (1st Cir.1991) *cert. denied,* 503 U.S. 986, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992).

A review of the many factors under *Colorado River* would have counseled abstention of the district court in the present case. The first factor, whether either court had jurisdiction over some res, does not apply. However, the facts of this case suggest that the federal court was not the most convenient forum; as noted above, plaintiffs' arguments to substantiate their 1983 claim pursuant to the and Fourteenth Amendments, were inapposite; this reasoning also applies to their 1985(3) claim. Moreover, plaintiffs' Fourteenth Amendment claim, if it had existed, could have been entertained by the state court, especially since plaintiffs based their Due Process claim on the deprivation of Angel Miguel's property interest, pursuant to Puerto Rican law (Law No. 68 Art. 2.04). This case also counseled against piecemeal litigation, since plaintiffs' state and federal claims arose from the same set of facts. Moreover, plaintiffs filed their state law ac-

tion on May 20, 1993, precisely a day before they filed the present case in federal court, May 21, 1993.

Although the presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction, *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942, there is no evidence to show that the state court would be unable to properly apply federal law. An examination of both the state and federal proceedings reveal that both claims arose from the same set of facts. State courts have the same obligation to uphold the constitution and enforce federal law,[1] and there is nothing in the record to show that the parallel state-court litigation would not be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943. Finally, our discussion of plaintiffs' claims reveals a certain degree of vexatious litigation, including the parties' frivolous application of the Fourteenth Amendment and 1985(3) claims. Despite all these considerations which counsel for abstention, we need not decide this issue, since our discussion on each of the plaintiffs' claims have already disposed of this controversy.

Therefore, defendants' motion for summary judgment is GRANTED (Docket # 30) and plaintiffs' complaint is DISMISSED. Judgment will be entered accordingly.

**SO ORDERED.**

---

1. The general principle of state-court jurisdiction over cases arising under federal law is straightforward: state courts may assume subject matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state court adjudication. *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–478, 101 S.Ct. 2870, 2874–2875, 69 L.Ed.2d 784 (1981); *see also Tafflin v. Levitt,* 493 U.S. 455, 458–460, 110 S.Ct. 792, 794–796, 107 L.Ed.2d 887 (1990); *Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 2438, 110 L.Ed.2d 332 (1990).